STATE, A. GRACIE KING ET AL., PROSECUTORS, v. ABRA-HAM A. DURYEA.

1. A construction of the acts to improve the Bull's Ferry road, in Hudson county, (*Pamph. L.* 1872, *p.* 1379; *Pamph. L.* 1873, *p.* 623,) and supplements, in regard to the method of levying assessments for benefits, and of that part of the statutes which provides for crediting upon the assessments for work done upon one part of the road the amount of the cost of work done upon another part of the road by land-owners themselves in front of their lands.

2. The power conferred by the act of 1872 upon the judge of the Circuit Court to fill a vacancy in the board of commissioners to make assessments, resulting from death, absence or other disability, can be exercised when a member of the board resigns, and no notice of such appointment is necessary in the absence of a statutory requirement to that effect.

3. The basis of the assessment is land-ownership, and a failure to assess a horse railroad company, the track of which runs over said improved road, because its franchise is more valuable by reason of the improvement, is not erroneous in the absence of proof that the real estate of the company is peculiarly benefited.

---

This writ brings up assessments against the property of Mrs. James King, Edward King, C. Duer and Mrs. Richards for work done under an act to improve Bull's Ferry road, in Hudson county, from the northerly line of the township of Weehawken to the Hackensack plank road, and also the branch road leading from Bull's Ferry road, opposite Wee-

King v. Duryea.

hawken street, in the town of Union, to Nineteenth street, in the township of Weehawken.

The main contention of the prosecutors is, that their land is situated upon a part of the improved road ; the lands within which part was, by the terms of the act, to be favored in making the,assessment, and that the assessment, as made, has not accorded to them the benefit to which they are entitled. To exhibit the nature of this contention, it is essential' that the clauses in the act upon which it is grounded should appear.

The fourth section of the act of 1872, (*Pamph. L.* 1872, *p.* 1379,) provides, first, that ten per cent. of the cost of the work shall be assessed upon the town of Union, and another ten per cent. upon the township of Weehawken. It then provided that the remaining eighty per cent. should be assessed upon the land and real estate along the line of the road, in proportion to the benefits received by the owners thereby.

By the ninth section of this act, the commissioners were authorized to divide the road into sections. By the ninth section of the supplement of April 3d, 1873, it was provided that in dividing it into sections, one section should extend from Fulton street to the northern boundary of Weehawken. This is known in this case as section No. 3. And another section shall extend from the southerly line of James G. King to Nineteenth street, in Weehawken. This is known in this case as section No. 1. All the rest of the road is known in this case as section No. 2.

By the tenth section of the supplement of April 3d, 1873, it was recited :

" And whereas it is contemplated that the owners of the lands and real estate along the line of said road, within the sections of said road described in section 9 of this act, may undertake, at their own expense, and under the supervision and subject to the direction of the said commissioners, to improve said road in said sections, to perform all labor and furnish all the materials and donate all the lands necessary to be taken in straightening and widening said road, and release all damages which will be done thereby to the residue of the

lands not taken on said sections of said road last referred to ; now therefore,

"*Be it enacted,* That the owners of the lands and real estate along the lines of said road described in section 9 of this act, shall, at their own option, to be declared to the said commissioners, be permitted and allowed, under the supervision of the said commissioners and subject to their direction, to perform all the labor and furnish all the materials on such sections, and donate all the lands necessary to be taken in straightening and widening said road in said sections ; said owners releasing all damages which shall be done to the residue of the lands not taken ; said commissioners, in making their assessments, shall estimate the value of the work so done and the materials furnished by said land-owners, and the value of the land donated and the amount of the damages released, if any, and shall credit the same on any assessments which they shall make on the lands of such land-owners as last aforesaid, which shall be in full of any assessment to be made upon said land-owners for the improvements authorized by said original act and this act; excepting, however, the charges and assessment for the incidental cost and expenses, and their portion of the general amount assessed upon and paid by the town of Union and the township of Weehawken, notwithstanding such work shall be done, materials furnished and lands shall be donated and damages released as aforesaid.

" The said commissioners are hereby authorizeα and directed to allow and apply the amount of money which shall be assessed against the town of Union and the township of Weehawken upon such portion of the Bull's Ferry road lying between Union street and Weehawken street and the southerly line of the lands formerly of James G. King, deceased, as said commissioners may determine, to the end that the lands which shall be assessed for the work, labor and materials, lands taken and damages, where such allowance shall be made on such last-named portion of said road, shall be relieved to the extent of such allowance, and such allowance shall be credited on the assessment therefor ; it being the intention that the

assessments shall be made as provided in the original act and this supplement, and that the credits shall be given and allowed as herein declared."

The facts upon which this question of construction of the foregoing acts arises will-appear in the opinion.

Argued at February Term, 1883, before Justices DEPUE, SCUDDER and REED.

For the prosecutors, *A. Q. Garretson.*

For the defendants, *Abel I. Smith.*

The opinion of the court was delivered by

REED, J.   The plan provided by the legislation already set out at length is, I think, indisputably the following:

The municipalities within which this work was done were to be assessed an amount equal to one-fifth part of the expense of the work, and the land-owners were to be specially assessed the remaining eighty per cent.

Afterwards, upon a desire being expressed by the land-owners along certain portions of the road to be permitted to do the work themselves in front of their lands, this wish was recognized by the legislature.

The cost of the work so done by these land-owners was to be ascertained by the commissioners, in order to find the twenty per cent. of the cost of the entire work.

These land-owners, in consideration of their being permitted to do this work, lost the benefit of the twenty per cent. general assessment.   They were to be assessed for benefits, but the cost of the work was to be credited upon and to be in full for such assessment.   The twenty per cent. of the cost of the work in front of their lands was still to be imposed upon the public, but was to be credited to the assessments upon a part of the lands along another portion of the road arbitrarily selected by the legislature.   The lands of the prosecutors were within the favored limits.

The commissioners found the entire cost of the work to be $217,691.36.  Twenty per cent. of that sum was assessed upon the town of Union and the township of Weehawken, leaving eighty per cent., or $174,153.09, to be assessed upon land-owners.  Of this sum only $151,512.61 was assessed, leaving $22,640.47 in addition to the twenty per cent. to be assessed upon the public.

The cost of work in front of the favored land-owners was $86,616.75.  The assessment upon these lands was the sum of $35,036.  The difference between the cost of this work and the amount assessed is $51,580.75.  The cost of the work done by the land-owners themselves is $66,571.61.  Twenty per cent. of this, to be credited on the favored portion, is $13,-314.34.  It appears, therefore, that the lands in question have not been assessed eighty per cent. of the amount of the cost of the work, and that the difference is an amount much greater than the twenty per cent. which should be credited.  The difference between the amount of the cost and the amount assessed arises from the conclusion of the commissioners that the latter amount represented the maximum of actual benefits resulting from the work.

The contention of the counsel for the prosecutors is, that notwithstanding this discrepancy they are entitled to the credit of the twenty per cent. upon the assessment as actually made.  The notion of the commissioners, as appears from the explanatory note accompanying their report, was that the reduction of the amount assessed below the cost of the work, although that reduction was caused by the limitation of actual benefits, was a substantial credit of the twenty per cent.

The last clause of section 10 of the act of 1873 sets out: "It being the intention that the assessments shall be made as provided in the original act and this supplement, and the credits shall be given and allowed as herein declared."

The view of the commissioners was that the assessment contemplated by the act of 1872, the original act above mentioned, and the supplement of 1873, was a frontage assessment, and

the credit of the twenty per cent. was to be made upon an assessment for the full cost of the work.

The answer of the prosecutors is that it was possible to make a constitutional assessment under the act of 1872, and the presumption is conclusive that the legislature meant an assessment limited to actual benefits as is here made. Conceding the possibility of such an assessment under these acts, yet it seems to me clear that section 10 was never enacted in the prospect of assessments made for benefits only, from some of which assessments a deduction was to be made and from others not.

The presumptive design of the legislature was to secure in this, as in all other cases, equality. It is highly probable that the whole scheme seemed to the draftsman of this legislation appropriate to this end. The reason why this special credit should be accorded to particular portions of land along the road must have existed in some peculiarity in the situation or condition of the land itself, or inequalities in the cost of the work. An analysis of the latter consideration shows that the result of the work proved that such an inequality actually existed. The cost of the work upon the non-favored part was $20.04 per foot; upon the favored portion $26.43 per foot. If the work conferred a uniform benefit, then those upon the favored portion, if assessed the amount of the cost, would pay a price in excess of that paid by others. If the assessment was only eighty per cent. of the cost, the same inequality between these land-owners and others would exist.

Whether the fundamental limitation upon the ability of the legislature to empower the commission to levy an assessment exceeding an amount representing peculiar benefits was in the legislative mind, is not a question upon which, in my judgment, the validity of this assessment hangs. That the legislature intended to reach that result is probably true. The legislature manifested that intention in two ways: First, by relieving the land-owner of twenty per cent. of the cost; and, second, by providing for a special credit of an unapplied fund, which resulted from the execution of certain of the work by

land-owners themselves, to a portion of the work done by the town. That the latter provision was made with the understanding that the deduction was to be made from an assessment of the entire eighty per cent. is, in my judgment, clear. There is no provision for the raising of a deficiency which might arise in case the amount of actual benefits should be less than the eighty per cent. This contingency is met for the first time in the act of 1875, (*Pamph. L., p.* 302,) which limits the assessment to the amount of the benefit received, and then provides that any excess of the cost over the benefits shall be paid by the town of Union and the township of Weehawken.

This supplement of 1875 which, by its terms, was engrafted upon the previous legislation, accomplished that equality which the previous legislation was presumably designed to reach. By it each land-owner was to be assessed only the amount which, in the judgment of the commissioners, represented his benefit, although it fell short of the eighty per cent. of the cost upon the unfavored and of the eighty per cent. less the special credit upon the favored portion. It is not essential that the force of the act of 1875 should be held to be so broad as to supersede entirely the method provided by the acts of 1872 and 1873. Had the assessment for benefits reached or closely approached the cost of the work upon the favored portion, then this view of the scope of the act of 1875 would have pressed for consideration. But our conclusion that the credit was to have been made from an assessment of the entire eighty per cent., and the fact existing that the assessment, as made, leaves an amount greater than the sum to be credited, relieves the case of the necessity of determining whether it was within the legislative intent, in any event, to permit an arbitrary credit in favor of one portion of land-owners when all had already been assessed by an equitable and uniform rule. I think the credit has, by the practical results of the present assessment, been made. Nor do I see that there is needed a specific determination of the commissioners as to the portions of the road within the favored limits to which the credit was applied. The credit is the result of the operation of the last

assessment for benefits and the difference between said assessment and the cost of the work. The commissioners had the power to apply the credit to any land within the favored portion. They have certainly refused to make any credit upon the assessment of any land-owner in excess of the difference between his benefit and the cost of the work. They have, by the result of the present assessment, practically applied more than all, and that is all that any land-owner could require.

Again, it is contended that the excess of the eighty per cent. over the amount of benefits has not been apportioned between the town of Union and the township of Weehawken.

In dividing and assessing this excess the commissioners have proceeded under the provisions of the act of March 18th, 1875, (*Pamph.*, *L. p.* 302, § 2,) which is as follows : " Any excess (if any) of said eighty per centum of cost over the benefit received by the land and real estate hereby made liable to such assessment, shall be paid by the town of Union and the township of Weehawken, in the proportion that the assessments on owners of lands of benefits in each town or township bears to the sum of the total assessments of benefits on owners of land in both town and township, and said excess shall be collected in the same manner provided in the former acts for the collection of said twenty per centum, in the former acts mentioned."

Prosecutors insist that the only amounts which should be taken into consideration in ascertaining the proper proportion of the excess to be paid by the town and township respectively, are those amounts which have been assessed upon lands to pay for the improvement of section No. 2.

I think the commissioners proceeded correctly in taking the relative benefits to land in each municipality for all the work done as the standard of their apportionment. This method is within the spirit and the letter of the act.

The reason directed at the exercise of the power of the Circuit judge to fill vacancies which should occur in the offices of commissioner, was not urged with much persistence upon the argument. The disability of two of the commissioners

seems to have been undoubted; but whether disabled or competent, they, after the completion of the improvement, resigned, which left a vacancy. This fact alone conferred power upon the Circuit judge to appoint others in their respective places. *State* v. *City of Newark*, 3 *Dutcher* 197.

The act required no notice to the prosecutors of the time and place of filling the vacancies, and unless required by the act they have no ground of complaint, unless interest or incapacity on the part of the appointees is shown. The disability of the two resigning commissioners was urged, however, as invalidating all the proceedings up to the time of the resignation of the two commissioners. These proceedings included all work up to the time of the completion and acceptance of the work. The assessment was made by the present commissioners. It is too late to raise objections to the steps taken anterior to the execution of the work. The line of decision respecting this aspect of the case is too well defined for further remark.

It is objected that a horse railroad company, whose tracks lie upon this road, should have been and were not assessed. It is probable that the value of the franchise owned by this company was enhanced by the grading of this road, although that is questioned. The assessment contemplated by these acts is not upon persons or personal property or franchises, but upon real estate. It appears that the company have stables in West Hoboken, but it does not appear what the character of the real estate is or that it is benefited in any degree by this road.

As to the remaining objections that the cost of this improvement has not been assessed upon all lands specially benefited, it is one which appeals so much to the judgment of those who by observation have acquainted themselves with the topography of the ground and the present and future uses of the contiguous real estate, that the judgment of the commissioners should not be reversed unless clearly erroneous. The prosecutors could complain of this only as tax-payers at large, for in no event is it conceivable that any assessment could be

laid upon property now unassessed which would relieve them from any special assessment. While it is possible to view the question of the assessability of property now unburdened in a light different from that taken by the commissioners, yet I am not at all clear that they were wrong in their views of the character of special benefits, or in their application to the properties which came under their consideration.

The result of the commissioners' work should not be disturbed by us without clearer convictions of erroneous judgment by them than we possess in this case.

As to the reason urging that the property of the prosecutors has been assessed for more than the amount of its special benefits, I think there is nothing in the case to show that the judgment of the commissioners was erroneous.

The assessment should be affirmed.